# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TANIA MOORER,
    Plaintiff,

    v.

U.S. BANK N.A., et al.,
    Defendants.

No. 3:17-cv-56 (VAB)

## RULING AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS
## AND PLAINTIFF'S MOTIONS TO STRIKE AND AMEND

Tania Moorer ("Plaintiff" or "Ms. Moorer"), proceeding *pro se*, sued U.S. Bank N.A.,

Successor Trustee to Bank of America, N.A., Successor in Interest to LaSalle Bank N.A., On

Behalf of the Registered Holders of Bear Stearns Asset Backed Securities I L.L.C. ("the Trust")

and Selective Portfolio Servicing, Inc. ("SPS") (collectively "U.S. Bank Defendants" or "U.S.

Bank"); Glass & Braus, L.L.C. ("Glass & Braus"); and Bendett & McHugh, P.C. ("Bendett &

McHugh") (collectively "Defendants"), alleging misconduct on the part of Defendants related to

a state-court foreclosure action in violation of the federal Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, *et seq.*; the federal Fair Credit Reporting Act ("FCRA"), 15

U.S.C. § 1681, *et seq.*; and the Fifth and Fourteenth Amendments to the U.S. Constitution; and

under the common-law torts of defamation, fraud, and intentional infliction of emotional distress

("IIEP"), and civil conspiracy. ECF No. 56.

Defendants now move to dismiss the Amended Complaint, Mots. To Dismiss, ECF Nos.

17, 20, 30, and Ms. Moorer has moved to amend the Amended Complaint, ECF No. 63.

For the reasons that follow, the Court **GRANTS** the motions to dismiss and **DENIES** the

motion to amend and motions to strike.

# I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

## A.  FACTUAL ALLEGATIONS[1]

Ms. Moorer argues that Defendants "unlawfully trespassed and committed fraud upon

and against the Plaintiff and her property and unlawfully slandered Plaintiff's reputation,

unlawfully caused monetary and emotional injury to Plaintiff due to their direct and intentional

acts." Amend. Compl. ¶ 1, ECF No. 56 at 3. In support of this contention, the Amended

Complaint maintains that Ms. Moorer never entered into a contract with Defendants. Am.

Compl. ¶ 9. U.S. Bank allegedly has not loaned Ms. Moorer "any amount of money," and

therefore she does not owe any money to U.S. Bank. *Id.* ¶¶ 10–11. The Amended Complaint

further maintains that Defendants are third-party debt collectors "since they are not the original

creditors." *Id.* ¶ 12.

### 1.  The 2014 Foreclosure Proceeding

On October 21, 2014, U.S. Bank, through its counsel at Bendett & McHugh, P.C., sued

"Tania D. Paige Moorer" in Connecticut Superior Court allegedly seeking payment on a

promissory note and mortgage in default that had been assigned to U.S. Bank. *See generally* Oct.

21, 2014, Compl. ¶¶ 1, 6, U.S. Bank's Br., Ex. A, ECF No. 17-3. On August 10, 2015, the court

granted U.S. Bank's motion for strict foreclosure. Aug. 10, 2015 Order, U.S. Bank's Br., Ex. B,

ECF No. 17-4. U.S. Bank, however, moved, on December 14, 2015, to vacate the judgment

because the account was allegedly "being reviewed for a loan modification," U.S. Bank's Mot. to

---

[1] The Court includes only factual allegations that are relevant to the motions to dismiss the Amended Complaint. For the purposes of ruling on the pending motions, the Court takes judicial notice of certain documents filed in Connecticut State Court relating to the underlying foreclosure proceedings. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

Vacate at 1, U.S. Bank's Br., Ex. C, ECF No. 17-5, which the court granted. Jan. 5, 2016, Order, U.S. Bank's Br., Ex. D, ECF No. 17-6.

On or around February 23, 2016, U.S. Bank again moved the court for judgment and strict foreclosure. U.S. Bank's Mot. for J. of Strict Foreclosure, U.S. Bank Br., Ex. E, ECF No. 17-7; Amend. Comp. ¶ 28. Ms. Moorer, in response, moved to dismiss U.S. Bank's claim in its entirety. Moorer's Mot. to Dismiss at 1, U.S. Bank's Br., Ex. F, ECF No. 17-8. The court summarily dismissed the case under Connecticut Practice Book Section 17-4(c)(1).[2] May 6, 2016, Order at 1, U.S. Bank's Br., Ex. G., ECF No. 17-9. The court denied U.S. Bank's motion to open the judgment of dismissal. July 5, 2016, Order at 1, U.S. Bank's Br., Ex. I, ECF No. 17-11.

### 2.    The 2016 Foreclosure Proceeding

On November 20, 2016, Glass & Braus sent Ms. Moorer a letter that read, in relevant part:

> We have been retained by [U.S. Bank] to collect [the] debt, which is, according to our client's records, overdue. This letter represents our demand for payment. If you intend to contest this debt or request validation thereof . . . or to exercise your rights . . . please call or otherwise contact us . . . within the next 30 days.

Notice Under the Fair Debt Collection Practices Act, Glass & Braus Br., Ex. A, ECF No. 21. The letter further stated:

> If you dispute the validity of this debt, please contact us within the next 30 days. If you do not dispute the validity of the debt, or portion thereof, within 30 days of the receipt of this letter, we will assume it is valid. If you dispute the validity of this debt or any portion thereof within 30 days of receipt of this letter, we will obtain and mail you verification of the debt or a copy of the judgment against you. At your request, within 30 days of receipt of this letter, we will

---

[2] Regarding a motion to set aside or reopen a judgment, the Connecticut Practice Book provides that: "Parties shall have five days from the filing of the motion to file an objection with the court." Practice Book § 17-4(c)(1).

provide you with the name and address of the original creditor, if different from the current creditor.

*Id.*

On December 7, 2016, U.S. Bank, through counsel at Glass & Braus, brought a new action to foreclose upon Ms. Moorer's mortgage. *See generally* Dec. 7, 2016, Compl., U.S. Bank's Br., Ex. J, ECF No. 17-12; Amend. Compl. *Id.* ¶ 28. According to Glass & Braus, that same day it received a Notice of Dispute dated December 9, 2016, from Ms. Moorer. Glass & Braus Br. at 3, ECF No. 21; December 9, 2016, Notice of Dispute ("Notice of Dispute"), Pl.'s Opp. to U.S. Bank's Mot. to Dismiss, Ex. J, ECF No. 25 at 59. The Notice of Dispute, which was directed at Glass & Braus states:

> In response to a letter that was sent by you dated November 20, 2016, I hereby dispute the validity of this debt pursuant to the Fair Debt Collections Practic[es] Act, 15 U.S.C. [§] 1692g []. Please send to me all of the certified documents that you have in your file at the time of this request concerning the alleged debt. In addition, please send the name and business address of the alleged original creditor.

Notice of Dispute, Pl.'s Opp. to U.S. Bank's Mot. to Dimiss, Ex. J, ECF No. 25 at 59.

Upon receiving such notice, Glass & Braus allegedly ceased all action against Ms. Moorer and forwarded the Notice of Dispute to its client. Glass & Braus Br. at 3. SPS allegedly provided a copy of a copy of the Mortgage Note and a copy of her transaction history to Ms. Moorer. *Id.*, Ex. C. Since filing the December 7, 2016, complaint, Glass & Braus alleges that it has "undertaken absolutely no action in the foreclosure matter against [Ms. Moorer] and has withdrawn as counsel." *Id.* a 4.

### 3. Debt Collection

The Amended Complaint alleges that before, during, and after U.S. Bank filed suit against Ms. Moorer, and notwithstanding her alleged "prior cease requests," Defendants sent

payment requests to Ms. Moorer. *Id.* ¶¶ 13. The Amended Complaint alleges that, by way of

SPS, U.S. Bank, presumably in correspondence seeking to collect on Ms. Moorer's debt,

misrepresented the dollar amount at issue and that any amount U.S. Bank and SPS claimed Ms.

Moorer owed was fraudulent due to the fact that she owed them no money. *Id.* ¶ 15. On July 18,

2016, allegedly, U.S. Bank, again through SPS, sent correspondence through the mail to Ms.

Moorer that threatened the sale of Moorer's property. *Id.* ¶ 17.

On November 20, 2016, Glass & Braus allegedly falsely held itself out as acting in the

capacity of attorneys, when, in fact, the Amended Complaint alleges, it was acting "in a debt-

collector's capacity." *Id.* at 18. On December 7, 2016, U.S. Bank, through Glass & Braus, again

allegedly threatened the sale of Ms. Moorer's property, which was unlawful, the Amended

Complaint maintains, because Ms. Moorer had disputed the amount owed. *Id.* ¶ 19.

### 4.    Credit Reporting

The Amended Complaint alleges that, on September 12, 2016, U.S. Bank, acting through

SPS, "defamed" Ms. Moorer's character by reporting false debts on her credit report. *Id.* ¶ 21.

U.S. Bank allegedly failed to remove the false information from Ms. Moorer's credit report "in a

timely manner" as she requested. *Id.* ¶ 24. U.S. Bank, acting through Bendett & McHugh, also

allegedly defamed Ms. Moorer's "public reputation" by allegedly entering false public records

into the Town of Stratford's land records in the form of *lis pendens*. *Id.* ¶ 22. Under the terms of

15 U.S.C. § 1681i, Ms. Moorer allegedly, through U.S. Bank's "express acknowledgement of

Plaintiff's dispute," indirectly notified the credit reporting agency of the disputed debt. *Id.* ¶ 25.

### B.    PROCEDURAL BACKGROUND

On January 12, 2017, Ms. Moorer brought suit against Defendants. U.S. Bank moved to

dismiss the Complaint arguing that her claims are barred under the *Noerr-Pennington* and

Connecticut litigation privilege doctrines, which, U.S. Bank argues, protect its right to petition the state court for redress. U.S. Bank's Mot. to Dismiss at 1, ECF No. 17. In the alternative, U.S. Bank argues that the Complaint must be dismissed because it "fails to state any claim." *Id.* at 2.

Glass & Braus moved to dismiss the Complaint by challenging the Court's subject matter jurisdiction and on the basis that the Complaint fails to state a claim upon which the Court may grant relief. Glass & Braus Mot. to Dismiss at 1, ECF No. 20.

Finally, Bendett & McHugh moved to dismiss the Complaint for failure to state a claim upon which the Court may grant relief. ECF No. 30.

The Court granted leave for Ms. Moorer to file an Amended Complaint and noted that it would consider Defendants' pending motions as addressed to the Amended Complaint. ECF No. Further, the Court granted leave for Defendants to submit supplemental briefs to address the Amended Complaint. *Id.* None did so. Ms. Moorer's Amended Complaint maintains that U.S. Bank and SPS intended to and did "damage Plaintiff financially by not returning all payments made to them, coerced from her by fraud." *Id.* ¶ 29. Defendants allegedly damaged Ms. Moorer's "standing in her community, defam[ed] her character [and] creditworthiness," causing her "loss of time at work, financial loss, [] trauma, humiliation, pain, ridicule, mental distress and mental anguish." *Id.* ¶ 33.

Under four subsections, each labeled a "Cause," the Amended Complaint, liberally construed, brings four largely overlapping causes of action. The first count alleges that Defendants, acted in concert to willfully violate the FDCPA, 15 USC § 1692c, *et seq.*, and the FCRA, 15 U.S.C §1681i. *Id.* ¶¶ 34–40.

The second count claims that Defendants, acted in concert, to willfully cause Ms. Moorer mental distress, *id.* ¶ 42, and their efforts did cause Ms. Moorer mental distress, *id.* ¶ 43, 44.

Principally, the Amended Complaint alleges that Defendants

> knew or should have known that their acts were in direct violation of clearly
> established law and any reasonable bank, debt collector, counsel and/or service
> agency would have know[n] that . . . sending correspondence regarding an
> invalidated debt, using unconscionable means to charge fees and interest not
> allowed by law without contract, stating false representations of the character
> amount, giving false implications of attorneys capacity in letterheads, filing
> unlawful civil actions to deprive Plaintiff Moorer of property, false credit
> reporting not removing false credit reporting, not ceasing collection efforts, and
> falsely representing services rendered would cause Plaintiff Moorer severe mental
> distress and mental anguish.

*Id.* ¶ 44.

The Amended Complaint, in the third count, alleges that Defendants "knew or should have known that monetary damages sustained by Plaintiff Moorer [were] the likely result of their conduct after filing civil actions to harass, false credit reporting, not removing false credit reporting as requested, and not returning payments coerced from Moorer by fraud." *Id.* ¶ 48.

In the fourth count, the Amended Complaint maintains that Defendants acted in "concert" to "maintain a pattern and practice of putting under duress, depriving of due process, and causing damage." *Id.* ¶ 52. Defendants allegedly "acted wantonly, recklessly, willfully, and maliciously in concert . . . . with the direct intent and sole purpose of harassing, injuring, humiliating, vexing, oppressing, and causing mental anguish to Plaintiff Moorer." *Id.* ¶ 57.

Ms. Moorer seeks compensatory and punitive damages and equitable relief, as well as reasonable attorney's fees and costs. *Id.* at 9.

At oral argument, Defendants again moved to dismiss Ms. Moorer's Amended Complaint by oral motion, ECF No. 59, and Ms. Moorer objected to Defendants' motions, ECF No. 61. The Court granted leave for the parties to file "supplemental briefing" by December 12, 2017. ECF No. 16. No party timely filed any supplemental briefing. On December 28, 2017, Ms. Moorer sought leave from the Court to amend the Amended Complaint. ECF No. 63. U.S. Bank and Glass & Braus have opposed the motion. ECF Nos. 64–65.

The Court addresses all pending motions below.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) (requiring that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief").

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, to state a plausible claim, a plaintiff's complaint must have "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 555, 557.

In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007); *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir. 1996) (citations omitted).

In considering a motion to dismiss, "a district court must [also] limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz*, 102 F.3d at 662 (citation and internal quotation marks omitted). The Court notes that the operative Complaint makes a number of references to

attached exhibits, yet, Ms. Moorer did not attach exhibits to the Amended Complaint. *See* ECF No. 56. The Court thus relies solely upon the alleged facts in her Amended Complaint.

Finally, *pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.  DISCUSSION

Construing the Amended Complaint "liberally and interpret[ing it] to raise the strongest arguments they suggest," Sykes, 723 F.3d at 403, the Court concludes that Ms. Moorer brings claims for damages under the Fifth and Fourteenth Amendments, FDCPA, FCRA, and Connecticut common-law torts of fraud, conspiracy, and intentional infliction of emotional distress and will address each of these claims in turn.

### A.  MS. MOORER'S FEDERAL CONSTITUTIONAL CLAIMS

The Amended Complaint asserts Defendants violated Ms. Moorer's Fifth Amendment rights "as purview through the 14th Amendment of the U.S. Constitution." Amend. Compl. ¶ 3. The Fourteenth Amendment constricts the conduct of states, not federal actors. *Sw. Oil Co. v. State of Tex.*, 217 U.S. 114, 119 (1910). The Amended Complaint plainly states that Defendants are entities operating "in the State of Connecticut." Amend. Compl. ¶¶ 5–8. As a result, U.S. Bank is subject, if at all, to the Fourteenth Amendment and not the Fifth, which applies to federal entities. Accordingly, the Court addresses Ms. Moorer's claims as arising under the Fourteenth Amendment.

Ms. Moorer alleges that Defendants' "trespassed . . . against Plaintiff and her property.
*Id.* U.S. Bank contends Ms. Moorer fails to state a claim upon which this Court may grant relief because "[a] claim for Constitutional violations lies only where there is state action." U.S. Bank's Br. at 25. The Court agrees.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "[T]he due process analysis is basically the same under both the Fifth and Fourteenth Amendments." *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998).

"'Because the United States Constitution regulates only the Government, not private parties,' a litigant . . . who alleges that her 'constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005)). As a corollary to the state-action requirement, "Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Ms. Moorer has not sufficiently plead either theory of liability.

### a.    No State Action

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and quotation marks omitted). "[T]he root requirement" of the Due Process Clause is

"that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citing *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)).

The time and manner of the predeprivation hearing is determined by balancing the competing interests at stake. A court must weigh (1) the private interests; (2) the governmental interests; (3) the need to avoid administrative burden and delay; and (4) the risk of error. *Loudermill*, 470 U.S. at 542–43 (citing *Mathews*, 424 U.S. at 335). Some situations exist where a postdeprivation hearing will satisfy the Fifth Amendment's due process requirement. *Id.* at 542 n.7 (citation omitted).

Ms. Moorer's claim fails for a lack of state action. Ms. Moorer does not, nor could she, allege facts that would support an allegation that the Defendants are state actors. The fact that a governmental actor may have granted them corporate charters does not change this. "All corporations act under charters granted by a government, usually by a State. They do not thereby lose their essentially private character." *San Francisco Arts & Athletics*, 483 U.S. at 543–44. Nor has Ms. Moorer alleged facts that would support an allegation that Defendants perform functions that have been "traditionally the *exclusive* prerogative" of the Federal Government. *Id.* at 544 (internal quotation marks and citation omitted). Finally, and perhaps most fundamentally, the Amended Complaint fails to allege sufficient facts to plausibly allege that the government has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Id.* at 546.

The Amended Complaint also contains insufficient factual detail to support an inference, to which she is entitled as Plaintiff, that she has been dispossessed of her home. Neither has Ms. Moorer refuted U.S. Bank's assertion that the 2016 foreclosure proceeding remains pending.

Swanson Aff. ¶ 5, ECF No. 17-1. As a result, it is unclear that she has been divested of her right to the real property for which she took out the mortgage at issue here.

### b.    No Taking

Assuming Ms. Moorer had alleged, which she has not, that Defendants were acting on behalf of the state, to the extent that Ms. Moorer alleges that Defendants' demand for payment on her mortgage is a "taking,"[3] this theory of liability also fails.

The Takings Clause of the Fifth Amendment[4] provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. There are two general categories of takings: physical takings and regulatory takings. *Vizio, Inc. v. Klee*, No. 3:15-CV-00929 (VAB), 2016 WL 1305116, at *17 (D. Conn. Mar. 31, 2016) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002)).

"To state a claim under . . . the Takings Clause, plaintiffs [are] required to allege facts showing that state action deprived them of a protected property interest." *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000-04 (1984)). The Takings Clause does not proscribe the "vast governmental power" to take private property for public use, provided that the government pays just compensation when it does. *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 734 (2010) (Kennedy, J. concurring). Therefore, takings claims typically involve property interests for which the government can provide monetary compensation without the government being deprived of the property or public benefit that it seeks. *See id.* at 740–41 ("It makes perfect sense that the remedy

---

[3] As discussed above, Ms. Moorer has not alleged that she has been deprived of her home.

[4] The Takings Clause of the Fifth Amendment applies to the states by operation of the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 241 (1897) (finding that a taking of private property by a state without compensation deprived the owner of due process within the meaning of the Fourteenth Amendment).

for a Takings Clause violation is only damages, as the Clause does not proscribe the taking of property; it proscribes taking without just compensation.") (internal quotation marks omitted). *Vizio, Inc.*, 2016 WL 1305116, at *18.

Regulatory takings claims must allege "specific and identified properties or property rights . . . to come within the regulatory takings prohibition," such that the challenged regulations are "so excessive as to destroy, or take, a specific property interest." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 541, 542 (1998) (Kennedy, J. concurring in the judgment and dissenting in part) (collecting cases identifying various specific property interests). *See also id.* at 554 (Breyer, J. dissenting) ("The 'private property' upon which the [Takings] Clause traditionally has focused is a specific interest in physical or intellectual property.").

Under the Takings Clause, ordinary obligations to pay money are different. "Unlike real or personal property, money is fungible." *United States v. Sperry Corp.*, 493 U.S. 52, 62 n. 9 (1989). In *Easter Enterprises v. Apfel*, a majority of five justices of the Supreme Court agreed that simply imposing an obligation to perform an act, such as making a payment, does not take property in a constitutional sense. *See* 524 U.S. at 539-47 (Kennedy, J.); *id.* at 554–58 (Breyer, J.). "As [its] language suggests, at the heart of the [Takings] Clause lies a concern, not with preventing arbitrary or unfair government action, but with providing compensation for legitimate government action that takes 'private property' to serve the 'public' good." *Id.* at 554 (Breyer, J.). The Takings Clause is not "a substantive or absolute limit on the government's power to act. The Clause operates as a conditional limitation, permitting the government to do what it wants so long as it pays the charge. The Clause presupposes what the government intends to do is otherwise constitutional." *Id.* at 545 (Kennedy, J.).

The Supreme Court, however, has never held that the Takings Clause applies to the creation of "an ordinary liability to pay money." *Id.* at 554 (Breyer, J.). Although the Second Circuit has yet to confront the issue, other Circuit Courts consistently have followed the conclusion reached by the majority of the Justices in *Eastern*—"that an obligation to pay [undifferentiated, fungible] money cannot constitute a taking." *W. Virginia CWP Fund v. Stacy*, 671 F.3d 378, 386-87 (4th Cir. 2011), *as amended* (Dec. 21, 2011) (collecting cases). In the absence of contrary Second Circuit authority, this Court agrees with the consensus view on the import of *Eastern Enterprises*.

Because a debt obligation merely requires payment of fungible, undifferentiated sums of money, Ms. Moorer does not have a cognizable Fourteenth Amendment property interest, the Takings Clause is not implicated and she lacks a viable takings claim.

### c.    No Reputational Harm

Under § 1983, presumably because of an injury to her reputation, Ms. Moorer suggests that "the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to [her] a right to be free of injury wherever the State may be characterized as the tortfeasor." *Paul v. Davis*, 424 U.S. 693, 701 (1976). This argument too fails. "[L]oss of standing in [the] community" is not a cognizable right under § 1983 and the Fourteenth Amendment. Amend. Compl. ¶ 33.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). And the Supreme Court's decision in *Paul* is instructive. There, the appellants, two police officers, included the respondent's name and mug shot in a "flyer of subjects known to be active in this

criminal field" that the officers circulated to local businesses. *Id.* at 695. Rather than filing a

claim of defamation in state court, the respondent sued in federal court under the Fourteenth

Amendment, alleging that he had been deprived of a right guaranteed to him by the U.S.

Constitution. *Id.* at 698.

The Court, in rejecting the claim, stated:

> [S]uch a reading would make of the Fourteenth Amendment a font of tort law to
> be superimposed upon whatever systems may already be administered by the
> States. We have noted the 'constitutional shoals' that confront any attempt to
> derive from congressional civil rights statutes a body of general federal tort law;
> [a] fortiori, the procedural guarantees of the Due Process Clause cannot be the
> source for such law.

*Id.* at 701.

As in *Paul*, Ms. Moorer "has pointed to no specific constitutional guarantee safeguarding

the interest [s]he asserts has been invaded." *Paul v. Davis*, 424 U.S. at 700; *accord Wilkinson*,

545 U.S. at 221. ("The Fourteenth Amendment's Due Process Clause protects persons against

deprivations of life, liberty, or property; and those who seek to invoke its procedural protection

must establish that one of these interests is at stake."). Further, it is not obvious where this line of

reasoning, if accepted, would stop. Ms. Moorer's assertion would "result in every legally

cognizable injury which may have been inflicted by a state official acting under 'color of law'

establishing a violation of the Fourteenth Amendment." *Id.* at 698–99.

The interest in reputation Ms. Moorer asserts in this case is neither "liberty" nor

"property" guaranteed against state deprivation without due process of law. *Paul*, 424 U.S. at

712. Ms. Moorer's Fourteenth Amendment claim therefore fails as a matter of law.

**B.     MS. MOORER'S OTHER FEDERAL CLAIMS AND THE UNDERLYING DEBT**

Ms. Moorer's Amended Complaint rests on a single flawed premise: the lack of standing

to foreclose on her mortgage, the underlying debt owed here. *See, e.g.*, Amend. Compl. ¶ 1

(arguing that Defendants "unlawfully trespassed and committed fraud upon and against the Plaintiff and her property and unlawfully slandered Plaintiff's reputation, unlawfully caused monetary and emotional injury to Plaintiff due to their direct and intentional acts.").

For example, the Trust allegedly lacked standing to bring the 2014 and 2016 foreclosure actions because it was not the assignee of the mortgage and therefore the underlying debt was invalid. Ms. Moorer then concludes that, because the assignment of the mortgage was improper, she is not in contractual privity with the Trust. As a result, the Trust has not loaned Ms. Moorer "any amount of money," and therefore she owes no money to it. *Id.* ¶¶ 10–11. Finally, Defendants are third-party debt collectors "since [Defendants] are not the original creditors pursuant to documents they furnished." [5] *Id.* ¶ 12. In short, any action to collect on the mortgage was and is a violation of the FDCPA and the FCRA and a number of state-law torts. The Court disagrees.

The Amended Complaint assumes, by way of at least four inferential steps, that U.S. Bank is not the holder of the note and therefore cannot collect on a debt under it. As the Connecticut Supreme Court, however, has stated:

> [S]tanding to enforce [a] promissory note is [established] by the provisions of the Uniform Commercial Code . . . . [See] General Statutes § 42a–1–101 et seq. Under [the Uniform Commercial Code], only a "holder" of an instrument or someone who has the rights of a holder is entitled to enforce the instrument. General Statutes § 42a–3–301.[6] The "holder" is the person or entity in possession of the

---

[5] In her response to U.S. Bank's motion to dismiss, Ms. Moorer argues that the Amended Complaint demonstrates that U.S. Bank and SPS are "debt collectors" because the "assignment of [her] defaulted debt" had "no clear chain of title," Pl.'s Opp. Br. to U.S. Bank's Mot. to Dismiss, ECF No. 25 at 1, and that the assignment of the debt is invalid because Defendants have failed to prove a "valid debt," *id.* at 2; *id.* 3 ("The 'invalidation' subject was only stated to show proof of abuse by [U.S. Bank] . . . ."); *id.* at 4 ("Defendant is mistaken on their presumption that the debt is valid."); *id.* at 25 ("Plaintiff has assumed [the] debt is invalid because it entered no contract, [U.S. Bank] is not the alleged original creditor, [and] they were allegedly assigned the defaulted debt.").

[6] "Person entitled to enforce" an instrument is defined under the Uniform Commercial Code as "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument . . . . A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." Conn. Gen. Stat. § 42a-3-301.

instrument if the instrument is payable to bearer. General Statutes § 42a–1–201(b)(21)(A). When an instrument is endorsed in blank, it "becomes payable to bearer and may be negotiated by transfer of possession alone . . . ." General Statutes § 42a–3–205 (b).[7]

*Equity One, Inc. v. Shivers*, 74 A.3d 1225, 1230–31 (Conn. 2013) (footnotes added) (internal quotation marks and case citations omitted). Connecticut "General Statutes § 49–17[8] allows the holder of a note to foreclose on real property, even if the mortgage has not been assigned to him." *Id.* at 1230 (footnote added).

Additionally, "a loan servicer for the owner and holder of a note and mortgage [has] standing in its own right to institute a foreclosure action against the mortgagor . . . ."[9] *J.E. Robert Co. v. Signature Properties, LLC*, 71 A.3d 492, 494 (Conn. 2013) (footnote added); *accord Equity One, Inc.*, 74 A.3d at 1231 ("This court also has recently determined that a loan servicer for the owner of legal title to a note has standing in its own right to foreclose on the real property securing the note." (citing *J.E. Robert Co.*, 71 A.3d at 494).

Indeed, the Connecticut Appellate Court has held that the holder of a note has the right to enforce the associated mortgage, although the assignment may not be valid. In *Chase Home Finance, LLC v. Fequiere*, 989 A.2d 606 (Conn. App. 2010), the court rejected the defendant homeowner's argument that plaintiff lacked standing to bring a foreclosure action because, as the argued, the plaintiff was not a bona fide assignee of the mortgage. *Id.* at 610. There, the

---

[7] Section 42a-3-205(b) of the Connecticut General Statute provides: "If an endorsement is made by the holder of an instrument and is not a special endorsement, it is a "blank endorsement". When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed."

[8] "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies." Conn. Gen. Stat. § 49-17.

[9] The Court notes that it appears SPS was not a party to the underlying foreclosure proceedings.

defendant executed a promissory note in the amount of $240,000 to BNC Mortgage, Inc. *Id.* at 608. As security for the note, the defendant executed a mortgage on real property as to Mortgage Electronic Registration Systems, Inc. (MERS). *Id.* MERS subsequently assigned the mortgage to Chase "by virtue of a recorded assignment of the mortgage. The promissory note was endorsed in blank by BNC Mortgage, Inc., and [was] in possession of the plaintiff." *Id.* at 609.

Here, in the 2014 foreclosure complaint, the Trust alleged that "[Ms. Moorer] executed and delivered a promissory note in the principal amount of $[149,750] to [Bravo Credit Corporation]." *Id.* at 608; U.S. Bank's Br. at 3, ECF No. 17-2. "[Ms. Moorer] executed and delivered a mortgage on real property located at [71 Roosevelt Avenue] in [Stratford] to Mortgage Electronic Registration Systems, Inc. (MERS)." 989 A.2d at 608; U.S. Bank's Br. at 3. "MERS subsequently assigned the mortgage to [the Trust] . . . and [it] is in possession of [the Trust]." 989 A.2d at 608–09; U.S. Bank's Br. at 3–4. "[T]he Note was in default, [t]herefore the Trust sought a judgment of foreclosure in the 2014 Foreclosure Action." U.S. Bank's Br. at 4.

As in *Chase Home Finance, LLC*, here, Ms. Moorer's "claim is based on the [her] assertion that . . . that the assignment of the mortgage . . . to the plaintiff was ineffective and that, consequentially, [Defendants] lack[] standing to pursue foreclosure of the property," 989 A.2d at 610, and any effort to collect on her mortgage on the part of Defendants was "fraudulent due to the fact that Ms. Moorer owes them nothing." Amend. Compl. ¶ 15; *see also* Pl.'s 2d Opp. Br., ECF No. 37 at 5 ("Defendants have no standing since there is no contract between them and the Plaintiff."); *id.* at 3 ("The assignment is a fraudulent document . . . ."). Ms. Moorer's argument therefore fails as a matter of law.

"General Statutes § 49–17 . . . codifies the common-law principle of long standing that 'the mortgage follows the note,' pursuant to which only the rightful owner of the note has the

right to enforce the mortgage." 989 A.2d 606 at 610–11. In *Chase Home Finance, LLC*, the court

held that "[t]he homeowner [] failed to offer any evidence to counter the [bank's] claim that it is

a bona fide holder of the promissory note secured by the mortgage on the defendant's property."

*Id.* at 611. The same is true here.

Although Ms. Moorer alleges that the debt at issue was "invalid" because there is "no

clear chain of title," Ms. Moorer has failed to allege facts that would support an allegation that

the Trust was not the holder of the Note. *See Bank of New York Mellon v. Bell*, No. 3:11-cv-1255

(JAM), 2014 WL 7270232, at *3 (D. Conn. Dec. 18, 2014) ("[T]he state legislature has codified

the common-law principle that the mortgage follows the note, providing that the owner of a debt

secured by real property can foreclose on the property even without having been assigned the

mortgage." (citing Conn. Gen. Stat. § 49-17)); *Chase Home Fin.*, 989 A.2d at 611 ("[T]he

mortgage follows the note . . . ." (citation omitted)). And she hasn't alleged the assignment of the

mortgage was improperly recorded, such that Defendants could not collect on it. *See Family Fin.*

*Servs., Inc. v. Spencer*, 677 A.2d 479, 484 (Conn. App. Ct. 1996) ("Our courts have clearly

interpreted [Conn. Gen. Stat.] § 47–10 to apply to the assignment of mortgages.");[10] *Connecticut*

*Nat. Bank v. Esposito*, 554 A.2d 735, 738 (Conn. 1989) ("[T]he dispositive question in

examining the validity of a mortgage is whether it provides 'reasonable notice' to third parties of

the obligation that is secured. The purpose of such 'reasonable notice' is to prevent parties that

are not privy to the transaction from being defrauded or misled." (internal citation omitted)).

---

[10] Section 47-10 of the Connecticut General Statutes provides that "No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. When a conveyance is executed by a power of attorney, the power of attorney shall be recorded with the deed, unless it has already been recorded in the records of the town in which the land lies and reference to the power of attorney is made in the deed." Conn. Gen. Stat. § 47-10.

She also has not alleged that she was a party to the assignment agreement as a third-party beneficiary, or that she has the right to enforce the terms of the agreement. *Cf. Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) ("The principle[] . . . that strangers may not assert the rights of those who 'do not wish to assert them' . . . underlie[s] the rule adhered to in New York—whose law governs the assignment agreements—that the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract." (internal citations omitted)); *id.* ("This rule has been applied to preclude claims where mortgagors have sought relief from their loan obligations . . . ." (citation omitted)); *see also Baurer v. Devenes*, 121 A. 566, 569 (Conn. 1923) ("The mere fact that one would receive a direct benefit from the performance of a contract, to which he is not a party, does not enable him to maintain an action at law upon it. There must, in addition to the benefit to the third party, be the intention of the parties to so benefit the third party." (internal quotation marks omitted) (quoting *Atwood v. Burpee*, 58 A. 237, 238 (Conn. 1904)).

As a result, Ms. Moorer does not have "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681(2009) ("[A]llegations [that] are conclusory [are] not entitled to be assumed true." (citing *Twombly*, 550 U.S. at 554–55). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [the plaintiff's] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *cf. Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 108 (2d Cir. 2017) ("Allco's conclusory allegations do not allow us to make any inferences of excessive burden. We therefore affirm the district court's dismissal of Allco's dormant Commerce Clause claim with respect to its New York facility.").

Ms. Moorer also fails to rebut the Trust's argument that, because Ms. Moorer has sued the Trust under federal law, "the Trust's standing is not at issue." U.S. Bank's Reply Br. at 4, ECF No. 39. As noted above, even if the Trust's standing were properly at issue, it would not bear the fruit Ms. Moorer seeks. The Second Circuit has noted that the rule that "that the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract . . . preclude claims where mortgagors have sought relief from their loan obligations." *Rajamin*, 757 F.3d at 86.

With this basic framework established, the Court will now address each of Ms. Moorer's federal claims more specifically.

### C. FEDERAL DEBT COLLECTION PROCEDURES ACT

Having found "abundant evidence . . . [of] abusive, deceptive, and unfair debt collection practices by many debt collectors," which too often "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," Congress enacted the Federal Debt Collection Procedures act. 15 U.S.C. § 1692. The FDCPA specifically seeks to ensure that debt collectors "who refrain from abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.*

The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" 15 U.S.C. § 1692e, or "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. For example, the statute imposes certain duties on the "debt collector," who, upon the consumer's written request within thirty days of the "debt collector" sending a notice of debt, shall "provide the consumer with the name and address of the original creditor, if different from the current

creditor." *Id.* § 1692g(a). Lastly, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." § 1692c(c).

Ms. Moorer alleges violations of § 1692c, § 1692e, § 1692f, and § 1692g.

### 1. Applicability of the FDCPA

#### a. Foreclosure Proceedings

Ms. Moorer alleges that validity of her "alleged debt" had been "nullif[ied]" and therefore the Trust's, Bendett & McHugh's, and Glass & Braus' attempts to foreclose on her mortgage was in violation of "Federal law." Ms. Moorer seems to suggest that her debt was invalided by operation of her December 9, 2016, Notice of Dispute, ECF No. 25 at 59 (citing 15 U.S.C. § 1692g).[11] Amend. Comp. ¶ 28. While the subsection accords a consumer specific procedural rights, on its face, the subsection does not contemplate that receipt of a notice of dispute operates to "nullify[]" the alleged debt. Assuming, for the sake of argument, that the debt had been "nullif[ied]," what remains is Ms. Moorer's assumption that the foreclosure proceedings themselves offend the FDCPA. This assumption, however, lacks the support of the prevailing law.

---

[11] Section 1692g(b) provides, in relevant part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

The threshold question is whether the FDCPA applies to an action of foreclosure. Under the statute, "debt" is defined to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). In relevant part, a "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).

As the Connecticut Supreme Court has noted:

> Connecticut follows the title theory of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property. . . . The mortgagor has the right to redeem the legal title previously conveyed by performing the conditions specified in the mortgage document.

*Mortg. Elec. Registration Sys., Inc. v. White*, 896 A.2d 797, 806 (Conn. 2006) (internal quotation marks omitted). "The mortgagee [or lender] has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded, always subject of course to the mortgage." *Id.* In other words, except for a limited purpose, "[i]n substance and effect," the mortgage is a security and the mortgagor—or, in this case, the homeowner—is sole owner of the land. *Id.*

"The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage . . . . Generally, foreclosure means to cut off the equity of redemption." *Ocwen Fed. Bank, FSB v. Charles*, 898 A.2d 197, 204 (Conn. App. Ct. 2006) (citing Conn. Gen. Stat § 47–36h). "[A]

judgment of foreclosure results in the vesting and divesting of title to property in discharge of a duty to, as opposed to, the payment of a sum of money." *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 321 (D. Conn. 2012) (citing *City of New Haven v. God's Corner Church, Inc.*, 948 A.2d 1035, 1040 (Conn. App. Ct. 2008).

In short, when the Trust, Glass & Braus, and Bendett & McHugh filed the challenged foreclosure actions in state court, they were not seeking a money judgment, as Ms. Moorer alleges, but they were instead seeking to enforce their security interest in Ms. Moorer's property. *See id.*; *see also Hill v. DLJ Mortg. Capital, Inc.*, No. 15-cv-3083 (SJF) (AYS), 2016 WL 5818540, at *7 (E.D.N.Y. Oct. 5, 2016), *aff'd*, 689 Fed. App'x 97 (2d Cir. 2017) (noting that a mortgage is a type of security interest with real property as the collateral that a lender can take if a debtor does not fulfill a payment obligation; it is not a promise to pay a debt (internal citation and quotation marks omitted) (quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012))). The Court finds that neither the 2014 nor the 2016 foreclosure proceeding sought to collect on a debt within the meaning of FDCPA.

That Glass & Braus and Bendett & McHugh, on behalf of U.S. Bank, also sought a deficiency judgment does not change the outcome. *See* Oct. 21, 2014 Compl. at 4, U.S. Bank's Br., Ex. A., ECF No. 17-3; Dec. 27, 2016, Compl. U.S. Bank's Br., Ex. J., ECF No. 17-12. Under Connecticut law, "[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure . . . ." Conn. Gen. Stat. § 49-1. Conn. Section 49-14 of the Connecticut General Statutes, however, carves out an exception to § 49-1 by providing that, "[a]t any time within thirty days after the time limit[] for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment." Conn. Gen. Stat. §

49-14. "Therefore under § 49-14, the mortgagee has to seek a deficiency judgment upon written motion made within thirty days after the time limit[] for redemption has expired." *Derisme*, 880 F. Supp. 2d at 321–22.

"[T]the deficiency judgment procedure, although procedurally a part of the foreclosure action, serves the separate function of providing for recovery on the balance of the note which was not satisfied by the strict foreclosure." *Maresca v. DeMatteo*, 506 A.2d 1096, 1099 (Conn. App. Ct. 1986), *overruled on other grounds by Ferrigno v. Cromwell Dev. Assocs.*, 689 A.2d 1150 (Conn. 1997). Since a deficiency judgment seeks money damages, it is tantamount to an action seeking to collect a debt. *Derisme*, 880 F. Supp. at 322 (citing *Eichman v. J. & J. Bldg. Co., Inc.,* 582 A.2d 182, 187 (1990) ("Indeed, deficiency judgment hearings more closely resemble suits for collection than condemnation hearings."). Failure to timely move for a deficiency judgment is a bar to any subsequent action to collect the debt secured by the mortgage. *Id.* "Although deficiency proceedings are a part of the main foreclosure suit they are separately brought by written motion and if not timely made will be lost." *Id.*

Put another way, under Connecticut's statutory foreclosure regime, until the party seeking foreclosure makes a timely motion for a deficiency judgment, a strict foreclosure action is solely an action to enforce a security interest at equity. *Id.* A timely motion for deficiency judgment has "the effect of converting the proceeding into an action at law for money damages . . . to effectuate the full and complete resolution of the issues between the mortgagor and the mortgagee in the most efficient manner." *Id.* Nevertheless, "[t]he majority of courts in this Circuit that have considered this issue have held that the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA." *Hill*, 2016 WL 5818540, at *7 (internal quotation marks

omitted) (quoting *Boyd v. J.E. Robert Co.*, No. 05-cv-2455, 2013 WL 5436969, at * 9 (E.D.N.Y. Sept. 27, 2013), *aff'd on other grounds*, 765 F.3d 123 (2d Cir. 2014) (listing cases)); *see also Derisme*, 880 F. Supp. 2d at 325 (listing cases).

For the purpose of § 1692f(6), which sets out a non-exhaustive list "unfair practices," § 1692a(6) applies to "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests," 15 U.S.C. § 1692a. "Since Section 1692a(6) expressly includes enforcers of security interests only in reference to Section 1692f(6), courts have held that an enforcer of [a] security interest is therefore not a debt collector for purposes of the other sections of the FDCPA." *Derisme*, 880 F. Supp. 2d at 323. That "the statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6) [] reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act." *Id.* at 323–24 (internal quotation marks omitted) (quoting *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. App'x. 458, 460 (11th Cir. 2009)). In *Derisme*, the Court was persuaded that "an enforcer of a security interest is only subject to § 1692f(6) and not to any other section of the FDCPA." *Id.* at 324–25; *see also id.* (listing cases). This Court finds no reason to part ways with this view of the law here.

The 2014 and 2016 foreclosure complaints contained a claim for a deficiency judgment. But the Amended Complaint makes no allegations that the Trust timely sought a deficiency judgment under § 49-14 in the foreclosure actions. Although the FDCPA may apply "where there is an attempt to collect money in addition to the enforcement of a security interest," *Derisme*, 880 F. Supp. 2d at 326, since the Trust cannot file a motion for a deficiency judgment against Ms. Moorer until after the strict foreclosure of the property, Conn. Gen. Stat. § 49-14, at

least with respect to the foreclosure proceedings, the Defendants have not engaged in conduct related to the collection of money to date. It thus follows that the Trust's seeking to enforce a security at equity cannot generally be said to be a "debt collector" within the meaning of § 1692a(6).

In *Derisme*, the plaintiff, also proceeding *pro se*, brought suit against a law firm in connection with a pending foreclosure action in Connecticut Superior Court alleging violations of the FDCPA. 880 F. Supp. 2d at 313. As in *Derisme*, Ms. Moorer's FDCPA claim is premised on the assumption that Glass & Braus and Bendett & McHugh, on behalf of the Trust, were collecting a debt when they filed for foreclosure in state court and thereby Defendants are subject to Sections 1692c, 1692e, and 1692g[12] and of the FDCPA. 880 F. Supp. 2d at 320.

As in *Derisme* and for the reasons discussed above, the Court rejects Ms. Moorer's claim that the foreclosure proceedings violated the FDCPA.

### b.      Litigation Conduct

It is possible, however, that Defendants could become a "debt collector," if they did something, in addition, to the actions required to enforce a security interest. To the extent that the Amended Complaint makes any possible allegations about Glass & Braus's and Bendett & McHugh's misconduct while litigating the foreclosure matters, the Court finds that, as plead, this conduct does not give rise to an actionable claim.[13]

---

[12] The Court notes that, under § 1692g, pleadings in a civil action do not trigger a debt collector's duty to send a notice to the consumer stating, among other things, the amount due and the name of the creditor. *See* 15 U.S.C. § 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)").

[13] The Court will address Ms. Moorer's specific claims against Glass & Braus and Bendett & McHugh more fully below.

In *Derisme,* the Court suggested that "the FDCPA's purpose to protect unsophisticated consumers from unscrupulous debt collectors is not implicated when a mortgagee is instead protected by the court system and its officers." *Id.* at 327 (citing *Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 656 (D. Del. 1990)); *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 Fed. App'x 89, 96 (2d Cir. 2012) (quoting the proposition approvingly).

On the other hand, since *Derisme*, the Second Circuit has questioned this premise. In *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, the court held that, where court filings "routinely come to the consumer's attention and may affect his or her defense of a collection claim, debt collectors do not have immunity from FDCPA liability for their litigation conduct." 875 F.3d 128, 137 (2d Cir. 2017) (internal quotation marks and citations omitted). The court distinguished civil litigation in state court and bankruptcy court proceedings, where litigation conduct cannot give rise to a FDCPA claim. *See generally*, *Midland Funding, LLC v. Johnson*, ___U.S. ___, 137 S. Ct. 1407 (2017) (holding that filing of a proof of claim that on its face indicates that the statute of limitations has run does not itself violate the FDCPA); *Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010) (finding no FDCPA violation for a false statement of claim). The material difference between these fora, *i.e.*, state civil court and bankruptcy court, is that "special protections [are] afforded a consumer under the Bankruptcy Code—protections that are unavailable where . . . the proceedings are in State court and the consumer, often unfamiliar with the law governing garnishment of bank accounts, has the benefit of neither counsel nor a bankruptcy trustee." *Arias*, 875 F.3d at 137 (citation omitted).

For its part, the court in *Derisme*, stated that, under Connecticut law, mortgagors in a foreclosure proceeding likewise do not need protection from abusive collection methods because the "state foreclosure process is highly regulated and court controlled." 880 F. Supp. 2d at 327.

The Court discusses the ways legal practice is regulated in Connecticut, including the Connecticut Rules of Professional Conduct, the court's authority to discipline attorney misconduct, and that disciplinary proceeding may be initiated by a debtor harmed by an "unscrupulous or less than diligent attorneys," as well as various defenses to a foreclosure action, which are meant to incentivize proper conduct on the part court officers. *Id.* at 328.

After *Arias*, however, there is some room for doubt. While Connecticut foreclosure proceedings are surely "highly regulated and court controlled," *Derisme*, 880 F. Supp. 2d at 327, *Arias* suggests that the applicability of the FDCPA turns on whether a litigant has the benefit of counsel, or its equivalent.

The Court, however, need not address the issue here. Other than Ms. Moorer's claim that the foreclosures proceedings were fraudulent, for which she has provided no factual basis, she has not alleged a plausible independent basis for liability, *e.g.*, that Glass & Braus and Bendett & McHugh had engaged in litigation conduct that could "discourage debtors from fully availing themselves of their legal rights." *Id.* at 136.

Ms. Moorer's claim that the Trust, Glass & Braus, and Bendett & McHugh have, in seeking a strict foreclosure on her property, have violated the FDCPA, therefore does not give rise to a claim upon which the Court can provide relief.

## 2. § 1692c

In relevant part, § 1692c(c) provides that, upon written notification by a consumer, "the debt collector [must] cease further communication with the consumer . . . ." The statute, however, sets out a number of exceptions. Specifically, the statute exempts further communications "to notify the consumer that the debt collector . . . may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or . . . to notify the

consumer that the debt collector . . . intends to invoke a specified remedy." 15 U.S.C. §§ 1692c(c)(2)–(3).

### a. The Trust

The Amended Complaint asserts that the Trust is a "third-party debt collector[]" by reason of it not being an "original creditor[]."Amend. Compl. ¶ 13. Further, the Amended Complaint asserts that, after Ms. Moore disputed the validity of the alleged debt, the Trust failed to cease collection efforts in violation of § 1692c. *Id.* ¶ 20. The Court rejects both premises.

As discussed above, to the extent that the Trust, Glass & Braus, and Bendett & McHugh sought to enforce a security interest in Ms. Moorer's property by way of strict foreclosure, they are only subject to § 1692f(6). With respect to the Trust more specifically, even assuming the Trust was seeking a money judgment, as opposed to a seeking a security interest, the Trust is not a "debt collector" within the meaning of the FDCPA.

The Supreme Court recently addresses the scope of a "debt collector" as defined by the FDCPA. In *Henson v. Santander Consumer USA Inc.*, the petitioners alleged "that [a bank] loaned money to petitioners seeking to buy cars; that petitioners defaulted on those loans; that respondent [] then purchased the defaulted loans from a bank; and that the respondent] sought to collect in ways petitioners believe troublesome under the Act." ___ U.S. ___, 137 S. Ct. 1718, 1720–21 (2017). "All that matters," the Court stated, was "whether the target of the lawsuit regularly [sought] to collect debts for its own account or does so for 'another.'" *Id.* at 1721. The Court held that a debt purchaser may indeed collect debts on its own account, but this does not bring such a purchaser within the ambit of the FDCPA. *Id.*

The Court's reasoning is rooted in the statutory text. It noted that "Congress expressly differentiated between a person 'who offers' credit (the originator) and a person 'to whom a debt

is owed' (the present debt owner)." *Id.* at 1723 (citing § 1692a(4)). The Court recognized that the statutory text "speaks not at all about originators and current debt owners but only about whether the defendant seeks to collect on behalf of itself or 'another.'" *Id.* And the Court rejected the petitioners' argument that because the exemptions under § 1692a "contemplate the possibility that someone might 'obtain' a debt 'owed or due . . . another,'" the word "owed" must refer only to a *previous* owner. *Id.* (citing § 1692a(6)(F)). "[I]t simply isn't the case that the statute's exclusions imply that the phrase 'owed . . . another' must refer to debts *previously* owed to another." *Id.* at 1724.

Under *Henson*, Ms. Moorer's arguments fail. As in *Henson*, the Amended Complaint asserts that Ms. Moorer defaulted on her mortgage, the Trust then purchased the defaulted mortgage from its originator, and that the Trust sought to collect in ways petitioners believe troublesome. *See* 137 S. Ct. at 1720–21. Additionally, the Amended Complaint, as in *Henson*, asserts that the Trust is a "debt collector" because the Trust fraudulently purchased her mortgage and, further still, liberally read, contemplated that the Trust is a "debt collector" because it purchased her mortgage only after she had defaulted on it. *See* Amend. Compl. ¶ 2 ("USBNA is a national bank in the business of buying stale defaulted consumer debt and pursuing collection efforts in the State of Connecticut."). Here too, as in *Henson*, however, the Trust sought to collect on a debt owed to it, not a "debt[] owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). The Trust sought to collect a debt on its own behalf, and therefore the Trust is a "creditor" within the meaning of the FDCPA; the FDCPA's strictures therefore do not extend to the Trust. *See Henson*, 137 S. Ct. at 1724 ("So a company collecting purchased defaulted debt for its own account . . .would hardly seem to be barred from qualifying as a creditor under the statute's plain terms.").

Because "[t]he FDCPA generally does not regulate creditors collecting on debt owed to themselves," *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 133 (4th Cir. 2016), *aff'd,* 137 S. Ct. 1718, Ms. Moorer has not alleged facts upon which this Court could provide relief on her FDCPA claims the against the Trust. The Court therefore will dismiss in its entirety Ms. Moorer's claim under the FDCPA against the Trust.

### b.    Select Portfolio Servicing

The Amended Complaint maintains that SPS violated § 1692c by sending payment demands to Ms. Moorer in breach of her prior "cease requests" made under § 1692g. Amend. Comp. ¶ 13. The Amended Complaint cites to a February 2, 2016, loan statement issue by SPS. ECF No. 25 at 20. The Court disagrees.

The decision in *Hill v. DLJ Mortg. Capital, Inc.* is instructive. There, the plaintiff appealed the lower court's dismissal of her FDCPA claims. 689 Fed. App'x 97, 98 (2d Cir. 2017). The plaintiff's FDCPA claims were "premised on monthly statements sent to her by [a loan servicer] regarding the total amount owing under her [mortgage]." *Id.* The court recognized that the servicer "sent these statements in compliance with the Truth in Lending Act ["TILA"], 15 U.S.C. § 1638(f), as implemented by 12 C.F.R. § 1026.41, which requires mortgage loan servicers to transmit monthly statements to consumers." *Id.* The court held that the monthly statements at issue do not constitute and attempt to collect on a debt and thus affirmed the lower court. *Id.* The Court finds no reason to depart from *Hill.*

Assuming but not deciding that SPS is a debt collector to whom the FDCPA applies, Ms. Moorer's argument misses the mark nonetheless. Here, as in *Hill*, SPS represented at oral argument that the loan statement was sent consistent with SPS's duties under the TILA. Again, as in *Hill*, the SPS statement does not state that "collection is sought," that the firm was a "debt

collector attempting to collect on a debt," or a demand for "full and immediate payment of all amounts due." *Id.* The loan statement at issue, in fact, contains no debt-demand language. Absent specific allegations that would support an inference that the loan statement was misleading or contained falsehoods, there is no basis for arguing that any provision of the FDCPA would apply here.

The Court also notes that Ms. Moorer's single Notice of Dispute is dated December 9, 2006—almost a year after the statement was issued—and is directed at Glass & Braus, not SPS. ECF No. 25 at 88. Even if the Court were to except that the statement was subject to § 1692(c), the time gap between the two documents, with the Notice of Dispute following the statement, defeats any inference, to which Ms. Moorer is entitled as the party opposing a motion to dismiss, that SPS acted in violation of § 1692(c).

### 3.    § 1692e

Section 1692e "aims to eliminate 'abusive debt collection practices,' by, as relevant here, barring "false, deceptive, or misleading representation[s] . . . in connection with the collection of any debt." *Sheriff v. Gillie*, ___ U.S. ___, 136 S. Ct. 1594, 1596 (2016) (internal citation omitted). "A representation is 'deceptive' under section 1692e if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Arias*, 875 F.3d at 135 (quoting *Easterling*, 692 F.3d at 233). "Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen." *Id.* at 135–36.

The Second Circuit analyzes the reasonableness of an interpretation from the perspective of the "least sophisticated consumer," who "lacks the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world." *Id.* (citing *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir.

2010)). The standard is objective and "pays no attention to the circumstances of the particular debtor in question, and asks only whether the <u>hypothetical</u> least sophisticated consumer could reasonably interpret the representation in a way that is inaccurate." *Id.* (internal question marks omitted) (quoting *Easterling*, 692 F.3d at 234). The standard "ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices." *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993).

### a.       Select Portfolio Servicing

### i.       Loan Statement

The Amended Complaint alleges that SPS, in sending Ms. Moorer the February 2, 2016, loan statement discussed above, misrepresented the alleged amount due and owing "since[] any amount would be fraudulent due to the fact that Plaintiff Moorer owed them nothing." Amend. Compl. ¶ 15. Again, as discussed above, Ms. Moorer's claim assumes that the debt was invalid. Even assuming Ms. Moorer sufficiently alleged the debt's invalidity, the statement was not "false, deceptive, or misleading." § 1692e.

In *Avila v. Riexinger & Assocs., LLC*, the Second Circuit vacated the lower court's dismissal of the plaintiffs' claim under § 1692e, where a collection notice sent by the defendant to them that stated the "current balance," but did not disclose that the balance may have increased due to interest and fees. 817 F.3d 72, 74 (2d Cir. 2016). The plaintiffs argued that, from reading the notice, "the 'current balance' was 'static' and that their 'payment of that amount would satisfy [the debt] irrespective of when [the] payment was remitted.'" *Id.* "Because the statement of an amount due, without notice that the amount is already increasing due to accruing interest or other charges, can mislead the least sophisticated consumer into believing

34

that payment of the amount stated will clear her account," the Court determined that the plaintiffs alleged sufficient fact to state a claim. *Id. at* 72.

Ms. Moorer's claim bears a different stripe. Here, by contrast, Ms. Moorer has not alleged that any part of the contents of the statement or the issuance of the statement itself are susceptible to "more than one reasonable interpretation, at least one of which is inaccurate," by the least sophisticate consumer. *Id.* at 75. Ms. Moorer instead alleges that the underlying debt is invalid, which, by reason of deduction, renders any communication about the debt "false, deceptive, [and] misleading." As discussed above, Ms. Moorer's conclusory allegations about assignment to the Trust, which are "not entitled to be assumed true," cannot support her claim. *See Iqbal*, 556 U.S. at 681.

### ii. Notice of Default

The Amended Complaint maintains that because SPS sent Ms. Moorer a Notice of Default, dated July 28, 2016, that threatened the sale of her home notwithstanding her December 9, 2016, Notice of Dispute in violation of § 1692e. Amend. Compl. ¶ 17; *see also* July 18, 2016, Notice of Default, Pl.'s Opp. to U.S. Bank's Mot. to Dismiss, ECF No. 25 at 41. The argument mirrors the argument that, in sending Ms. Moorer a loan statement, SPS misrepresented the alleged amount due and owing "since[] any amount would be fraudulent due to the fact that Plaintiff Moorer owed them nothing." Amend. Compl. ¶ 15. This argument fails.

Ms. Moorer's claim bears no resemblance to that made in *Avila*. Unlike in *Avila*, Ms. Moorer has not alleged that any part of the contents of the Notice or SPS's issuance of the statement are susceptible to "more than one reasonable interpretation, at least one of which is inaccurate," by the least sophisticate consumer. *Id.* at 75. As with the loan statement, Ms. Moorer

challenges the Notice because the underlying debt is somehow invalid. This argument, however, cannot save her claim.

### iii.     Credit Report

The Amended Complaint also contends that SPS "defamed Plaintiff Moorer's character by reporting false and unverified debts to her credit report." Amend. Compl. ¶ 21. This argument too fails.

Again, the argument mirrors Ms. Moorer's contention that, in sending her a loan statement, the alleged amount due and owing was by definition false "since[] any amount would be fraudulent due to the fact that Plaintiff Moorer owed them nothing." *Id.* ¶ 15. Without needlessly restating the Court's reasoning above, without sufficient factual detail to support her claim of "ow[ing] them nothing," Ms. Moorer's argument cannot withstand a motion to dismiss.

### b.     Glass & Braus

The Amended Complaint asserts that Glass & Braus, on the Trust's behalf, "threatened the sale of Plaintiff Moorer's property[,] which[] violates Federal law since it is not [a] lawful action according to the laws mentioned in Plaintiff Moorer's dispute notice . . . ." Amend. Compl. ¶ 19 (citing 12/9/2016 Notice of Dispute, Pl.'s Opp to U.S. Bank's Mot. to Dismiss, Ex. J, ECF No 25 at 59). It also alleges that that Glass & Braus falsely held itself out as a law firm when, in fact, the firm was acting in a "debt-collector's capacity." *Id.* ¶ 19 Glass & Braus argue that, Ms. Moorer's claims against it are not ripe and should be dismissed. Glass & Braus Mot. to Dismiss at 1, ECF No. 20. Assuming, without deciding whether Ms. Moorer's claims are ripe, Ms. Moorer's two allegations cannot give rise to a claim for two related reasons.

### i.        Foreclosure

Ms. Moorer has alleged that Glass & Braus, in seeking to foreclose upon her home, violated § 1692e. As discussed above, Ms. Moorer's argument, like those above, assumes that the underlying debt is invalid, which makes invalid any attempt to claim her property. As a result, this argument fails, as did her arguments directed at SPS.

### ii.        False Representation

The Amended Complaint also alleges that Glass & Braus falsely represented that it was acting in an attorney's capacity, when it was, in fact, acting as a debt-collector. Amend. Compl. ¶ 18. The Amended Complaint references a November 20, 2016, Notice Under the Fair Debt Collection Practices Act ("FDCPA Notice") that Glass & Braus sent Ms. Moorer. This argument, however appealing, is unpersuasive.

In *Sheriff*, the Supreme Court addressed a similar situation. Debtors brought a class action against attorneys at a private law office appointed by a state attorney general to collect debts owed to the state, and claimed that the debt collector's use of the attorney general's letterhead was false, deceptive, or misleading, in violation of the FDCPA. 136 S. Ct. at 1597. The Court decided that: "Not fairly described as 'false' or 'misleading,' use of the letterhead accurately conveys that special counsel, in seeking to collect debts owed to the State, do so on behalf of, and as instructed by, the Attorney General." *Id.* at 1598.

As in *Sheriff*, Ms. Moorer fails to state a claim. First, the second page of the challenged letter clearly states: "THIS LAW FIRM IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT." 11/20/2016 FDCPA Notice, Pl.'s Opp. to U.S. Bank's Mot. to Dismiss, Ex. B, ECF 25 at 13. Second, the letter itself was on Glass & Braus letterhead. *See* November 20, 2016, FDCPA Notice (showing Glass & Braus and its address at the top of the page). Third, Ms.

Moorer has not alleged that Glass & Braus, "in sending letters on [its own] letterhead, use[d] a name other than [its] 'true name.'" *Sheriff*, 136 S. Ct. at 1601–02. The meaning of "'true name' is straightforward: A debt collector may not lie about his institutional affiliation.") *Id.* at 1602 (citation omitted). Finally, Glass & Braus has not misrepresented itself when the letter states that it was acting at [the Trust's] instruction. *See* 11/20/2016 FDCPA Notice ("We have been retained by the above-listed creditor to collect this debt . . . .). Here, Glass & Braus, were agents of the Trust and were acting on its behalf in debt-related matters. *Id.* "Far from misrepresenting [Glass & Braus's] identity," the letters sent appear to "accurately identify the [the Trust as] responsible for collection of the debt . . . [Glass & Braus's] affiliation with that office, and [SPS's] address . . . to which payment should be sent." *Id.* Under the circumstances, the letter cannot be "fairly described as 'false' or 'misleading.'" *Sheriff*, 136 S. Ct. at 1598.

### 4. § 1692f

Section 1692f prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "Section 1692f . . . is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Arias* 875 F.3d at 136. It provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. As with other sections of the statute, § 1692f includes a non-exhaustive lists of conduct that would give rise to a claim under the section.

The FDCPA leaves the term "unfair or unconscionable means" undefined, but the Second Circuit has stated that the term refers to a practice that is "shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness." *Arias*, 875 F.3d at 135 (quoting *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 128 (2d Cir. 2016)). Here, "[t]he least

sophisticated consumer standard is used to determine whether a practice is unfair or unconscionable." *Id.* (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200–01 (11th Cir. 2010)).

### a. Select Portfolio Servicing

The Amended Complaint alleges, by reference to a single Mortgage Statement SPS sent to Ms. Moorer, that SPS "used unconscionable means to collect interest and fees from Plaintiff." Amend. Compl. ¶ 14. This is not a plausible basis for liability.

While § 1692's language is broad, as plead, Ms. Moorer's allegation does not amount to "unfair or unconscionable conduct." *See Sussman v. I.C. Sys., Inc.*, 928 F. Supp. 2d 784, 787 (S.D.N.Y. 2013) (concluding that facts alleged by Plaintiff—that, "in an attempt to collect a debt for home telephone bills which the plaintiff did not owe, the defendant placed over 50 calls to the plaintiff's residential telephone lines without the plaintiff's consent"—"do not rise to the level of 'unfair or unconscionable' acts"); *Tsenes v. Trans-Cont'l Credit & Collection Corp.*, 892 F. Supp. 461, 465-66 (E.D.N.Y. 1995) (plaintiff did not state an independent cause of action under Section 1692f when he alleged that he received debt collection letters that implied that legal action could be taken against him by saying "to withhold further action, return this statement with payment in full").

Basing liability on SPS sending Ms. Moorer a single loan statement would stretch "unfair or unconscionable conduct" beyond recognition, given that even an unsophisticated consumer could not reasonably interpret that the challenged document was "shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness."[14] *Arias*, 875 F.3d at 135;

---

[14] Section 1692f explicitly forbids "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1); *see also Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 308 (2d Cir. 2003) (a "cause of action under § 1692f(1) requires a showing that defendants attempted to collect an amount

*see, e.g.*, *Midland Funding, LLC*, 137 S. Ct. at 1413 (noting that lower courts "have found or indicated that, in the context of an ordinary civil action to collect a debt, a debt collector's assertion of a claim known to be time barred is 'unfair'"); *Arias*, 875 F.3d at 138 (finding that the plaintiff stated a claim insofar as the defendant required the plaintiff "to prepare needlessly for a hearing that [the defendant] knew was frivolous and that was intended primarily to harass [the plaintiff], frustrate his []claim, and erect procedural and substantive challenges that [the plaintiff] pro se, was ill-equipped to handle.'"); *cf. Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015) (finding that a collection letter that stated that the plaintiff was responsible for her mother's medical bill was not unfair or unconscionable). After all, other than the fact that the documents exists and was sent to her by mail, Ms. Moorer has made no allegations about the document's contents.

Ms. Moorer's naked assertions, without further factual development, cannot give rise to a claim under § 1692f. *See Twombly*, 550 U.S. at 545 ("[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted); *see also Cicalo v. Hunt Leibert Jacobson, P.C.*, No. 3:16-cv-339 (SRU), 2017 WL 101302, at *3 (D. Conn. Jan. 10, 2017) ("Because [the plaintiff] does not advance an independent violation of that subsection, I dismiss the section 1692f claim." (citing *Ghulyani v. Stephens & Michaels Assocs., Inc.*, No. 15-CV-5191 SAS, 2015 WL 6503849, at *2 (S.D.N.Y. Oct. 26, 2015) ("Where the allegations do not identify any misconduct beyond that which plaintiff asserts violates other provisions of the FDCPA, plaintiff has not stated a claim for relief under section 1692f.")).

---

not expressly permitted either by the agreement creating the debt or by law."). The Court has adequately addressed, and dispatched, Ms. Moorer's arguments about the invalidity of the underlying debt and declines to rehearse them again here.

### 1. § 1692g

Finally, Section 1692g, sets out the obligations of a debt collector once a consumer "notifies the collector in writing that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor." § 1692g(b).

### a. Glass & Braus

Ms. Moorer alleges that, on December 7, 2016, Glass & Braus "again threatened the sale of Plaintiff Moorer's property," which she claims violated the terms § 1692g(b), Amend. Compl. ¶ 19, under which she disputed the alleged debt. 12/9/2016 Notice of Dispute, ECF No. 25, at 59. The argument fails.

Again, assuming without deciding that the claim is ripe, as plead, the Amended Complaint cannot sustain a violation of § 1692g(b). Section 1692g(b) imposes obligations on the debt collector based upon an action taken by the consumer: when the consumer notifies the debt collector in writing that the consumer disputes the debt, the debt collector then must refrain from collecting the debt until the debt collector can obtain and furnish to the consumer certain details about the loan and the original creditor. 15 U.S.C. § 1692g(g). For current purposes, the debt collector's duty ends there. *ValleCastro v. Tobin*, No. 3:13-cv-1441 (SRU), 2015 WL 6478412, at *9 (D. Conn. Oct. 27, 2015) ("Consistent with the plain language of the subsection, verification . . . does not require the debt collector to do anything more than confirm the amount of the debt and the identity of the creditor, and relay that information to the consumer.") (internal

quotation marks omitted) (quoting *Ritter v. Cohen & Slamowitz, LLP*, No. 14-cv-5736 (ADS) (ARL), 2015 WL 4523266, at *6 (E.D.N.Y. July 24, 2015).

The 2016 foreclosure complaint is dated December 7, 2016; Ms. Moorer's Notice of Dispute is dated December 9, 2016. Notice of Dispute, Pl.'s Opp. to Glass & Braus Mot. to Dismiss, Ex. J, ECF No. 25 at 59. Given that the Notice of Dispute is dated December 9, 2016, the duty to cease collections efforts does not attach until that date. The Amended Complaint expressly alleges, that "[o]n or about December 7, 2016, . . . G&B, again threated the sale of Plaintiff Moorer's property," which is allegedly "unlawful . . . according to laws mentioned in Plaintiff Moorer's dispute notice . . . ." Amend. Compl. ¶ 19. Glass & Braus's obligation to cease collection efforts did not accrue until after it had already filed the 2016 foreclosure complaint. And the Amended Complaint makes no allegations about Glass & Braus's future conduct beyond the date of the 2016 foreclosure complaint. As a result, Glass & Braus could not have violated § 1692g(b).

All of Ms. Moorer's FDCPA claims therefore are dismissed.

### D.    FAIR CREDIT REPORTING ACT

The Amended Complaint asserts that the Trust failed to remove "false and injurious" information from her credit report in a timely manner as she had requested. Amend Compl. ¶ 24. The Trust argues that §1861s-2(a) provides no private right of action. U.S. Bank Br. at 23. The Court agrees.

The FCRA regulates credit reporting to ensure the confidentiality, accuracy, relevance, and proper use of consumers' information. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing § 1681(b)). The FCRA imposes, as part of its regulatory scheme, several duties on those who provide information to consumer agencies. *Id.* (citing § 1681s–2). "Among

these are duties to refrain from knowingly reporting inaccurate information, *see* § 1681s–2(a)(1), and to correct any information they later discover to be inaccurate, *see* § 1681s–2(a)(2)." *Id.*

Of particular relevance, the FCRA provides a consumer the right to dispute information reported to a credit reporting agency. § 1681i(a)(1)(A). If a consumer disputes information reported to the agency, both the agency and the furnisher of that information have a duty to conduct a "reasonable investigation" and verify that the information is accurate. *Id.* If a dispute is filed with the provider of the information, the furnisher has only a duty to investigate in certain circumstances set out in the regulation. *Longman*, 702 F.3d at 151(citing § 1681s–2(a)(8); 16 C.F.R. § 660.4; *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 35 & n. 8 (1st Cir. 2010)).

"Enacted long before the advent of the Internet, the FCRA applies to companies that regularly disseminate information bearing on an individual's 'credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1540 (2016), *as revised* (May 24, 2016) (citing § 1681a(d)(1)).

Section 1681i provides: [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information . . ." § 1681i(a)(1)(A).

> The credit reporting agency's "reinvestigation" typically entails sending a Consumer Dispute Verification form ("CDV") to subscribers (usually creditors) that have reported a disputed account. . . . [T]he CDV asks subscribers to check whether the information they have about a consumer matches the information on TRW's credit report. If a subscriber fails to respond to a CDV or indicates that TRW's account information is incorrect, [the credit agency] deletes the disputed information." If reinvestigation does not resolve an account dispute, consumers may file with their credit report "a brief statement setting forth the nature of the dispute," . . . which must be included 'in any subsequent consumer report containing the information in question along with a notation that the matter is

> disputed by the consumer.

*Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal citations and questions marks omitted) (citation omitted). Such a notice, however, must be from a consumer reporting agency for § 1681s-2 to apply. *MacPherson v. JP Morgan Chase Bank, N.A.*, No. 3:09CV1774 (AWT), 2010 WL 3081278, at *4 (D. Conn. Aug. 5, 2010), *aff'd sub nom. Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011) (citing U.S.C. § 1681i(a)(2)).

The decision in *MacPherson* illustrates the point. There, the plaintiff alleged that his credit score was reduced in error by a credit reporting agency based on information provided by the defendant, a bank with whom the plaintiff held a credit card. 2010 WL 3081278, at *4. The plaintiff also alleged that he had provided a notice of dispute to the defendant, about a finance charge that appeared on his bill from the bank. *Id.* In other words, the plaintiff alleged that the defendant "furnished inaccurate information relating to him, a consumer, to [] a consumer reporting agency, even though the defendant had been notified by him that the specific information was inaccurate, which is conduct expressly prohibited by 15 U.S.C. § 1681s–2(a)(1)(B)." *Id.*

Though resolved on grounds of federal preemption, the Court noted that "although the facts alleged by the plaintiff would, if proven, constitute a violation of the FCRA, the plaintiff does not allege facts for which there is a private right of action under the FCRA." *MacPherson*, 2010 WL 3081278, at *4 n.6. Because, if a furnisher of information provides inaccurate information "after receiving notice *from the consumer himself*, the conduct falls squarely within § 1681s–2(a)(1)(B)." *MacPherson*, 2010 WL 3081278, at *4 (internal quotation marks and citation omitted). Section 1681s–2(a)(1)(B) instructs that a provider of information shall not offer information relating to a consumer to any credit reporting agency if: 1) the consumer has

notified the furnisher that specific information is inaccurate; and 2) "the information is, in fact, inaccurate." *Id.* at *3.

Under the FCRA, a consumer does have a private right of action. Such a right accrues against "[a]ny person who willfully fails to comply with any requirement imposed" by the statute with respect to that consumer and against "[a]ny person who is negligent in failing to comply with any requirement imposed" by the statute. 15 U.S.C. §§ 1681n(a) & 1681o(a). These sections, however, do not apply to violations of section § 1681s–2(a). *Id.* (citing 15 U.S.C. § 1681s–2(c)(1) ("[S]ections 1681n and 1681*o* of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder.")). Accordingly, there is no private right of action for a violations of § 1681s–2(a). Since *MacPherson*, the Second Circuit has affirmed, that § 1681s–2(a) does not afford a private right of action. *See Longman*, 702 F.3d at 151 (2d Cir. 2012) ("[T]he district court correctly concluded, as many other courts have held, that there is no private cause of action for violations of § 1681s–2(a).") (listing cases).

Here, Ms. Moorer does not allege that the credit reporting agency notified the Trust that the information it provided about her was in dispute. She alleges the exact opposite. *See* Amend. Compl. ¶ 12 (alleging that the Trust failed to remove information from her credit report "as she priorly requested"). Consequently, her claim does "arise under laws with respect to subject matter regulated under § 1681s–2." *MacPherson*, 2010 WL 3081278, at *4. Further, other than her allegation that the debt is fraudulent, an allegation premised on Defendants not having the legal authority to foreclose on her mortgage, Ms. Moorer has not otherwise asserted that any of the information appearing in her credit report was inaccurate. *See Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 210 (D. Conn. 2013) ("Plaintiff has presented no evidence of any inaccurate information appearing in his own credit report at any time relevant to this litigation.").

In any event, even if Ms. Moorer could make out a claim on these alleged facts, and the Court finds she cannot, she would have to appeal to state or federal officials to vindicate this right on her behalf. *See MacPherson*, 2010 WL 3081278, at *4 n.6 (citing *Kane,* 2005 WL 1153623, at *4).

Ms. Moorer's FCRA claim therefore is dismissed.

### E.  SUPPLEMENTAL JURISDICTION

To the extent that the Amended Complaint may be construed to assert state law claims, the Court declines to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367. Supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ( "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Because the Court has granted Defendants' motions to dismiss on Ms. Moorer's federal claims, it declines to exercise supplemental jurisdiction over any remaining state law claims. *See, e.g.*, *Figueroa v. Semple*, No. 3:12-CV-00982 VAB, 2015 WL 3444319, at *8 (D. Conn. May 28, 2015) (declining to exercise supplemental jurisdiction). Ms. Moorer's "claims may be

vindicated, if at all, in state court under traditional state law principles." *Giammatteo v. Newton*, 452 Fed. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

All state law claims asserted in the Amended Complaint, however, are dismissed here.

## F.     SECOND AMENDED COMPLAINT

Because the Court has already granted Ms. Moorer leave to amend her Complaint once and the proposed Second Amended Complaint fails to remedy any of the legal deficiencies addressed above, Ms. Moorer's motion to amend is denied. *See Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (*per curiam*) ("Leave to amend need not be granted where the proposed amendment would be futile."); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) (citing *Williams*); *see also Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (finding futility and denying appellant's motion to amend where neither of two were fiduciaries of the pension plan at issue within the meaning of the Employment Retirement Income Security Act); *MacPherson*, 2010 WL 3081278, at *4 (finding futility where plaintiff did not alleged that the credit reporting agency notified the defendant bank that reported information was disputed and therefore there was no private right of action the FCRA).

## IV.     CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss are **GRANTED**. Ms. Moorer's claims under the Fair Debt Collection Practices Act, the Fair Debt Credit Reporting Act, and the Fifth and Fourteenth Amendments are dismissed as to all Defendants. Her tort claims are dismissed under 28 U.S.C. § 1367.[15]

The Court **DENIES** the motions to strike.

The Court **DENIES** the motion to amend.

---

[15] Having dismissed Ms. Moorer's constitutional and statutory claims, the Court does need not and does not address whether the *Noerr-Pennington* and Connecticut litigation privilege doctrines apply.

The Clerk of the Court is instructed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of January, 2017.

                                    /s/ Victor A. Bolden
                                    VICTOR A. BOLDEN
                                    UNITED STATES DISTRICT JUDGE